**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| VICTOR PARRIS MITCHELL | ) | |
| Plaintiff, | ) | |
| | ) | |
| V | ) | Case No. |
| | ) | |
| CARL COX, PAUL OAKENFOLD | ) | |
| PERFECTO RECORDS, a UK | ) | |
| registered) Company, JOEL | ) | |
| THOMAS ) ZIMMERMAN, | ) | |
| AKA DEADMAU5, MAU5TRAP | ) | |
| RECORDS, ULTRA MUSIC | ) | |
| SONY MUSIC, MARK BROWN | ) | |
| and CR2 RECORDS LTD | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, Victor Parris Mitchell, p/k/a/ Victor Romeo ("Plaintiff" or "Mr. Mitchell"),

hereby submits his Complaint against Defendants Carl Cox, Paul Oakenfold, Perfecto Records,

Juel Thomas Zimmerman, a/k/a Deadmau5, Mau5Trap Records, Ultra Records, CR2 Records

(each a "Defendant" and collectively, "Defendants") states as follows:

PARTIES

1.      Plaintiff Victor Mitchell p/k/a Victor Romeo, is a resident of the State of Illinois.

2.      Defendant Carl Cox. ("Cox"), is a person having a principal place of business in the City

of Hove, Sussex England.

3.      Defendant Paul Oakenfold . ("Oakenfold"), is a person having a principal place of

business in the City of Bastrop, Texas.

4.     Defendant Perfecto Records. ("Perfecto Records"), is a business having had a principal

place of business at 3rd Floor 23/33 Gosfield Street, London, England.

5.     Plaintiff is informed and therefore believes and alleges that at all relevant times, Perfecto

conducted business through its principal owner and officer Defendant Paul Oakenfold.

6.     Defendant Joel Thomas Zimmerman ("Zimmerman"), is a person having a principal place

of business in the City of Campbellsville, Ontario Canada.

7.     Defendant Mau5Trap Records, is a business having its principal place of business at 1600

Ventura Blvd., Encino California.

8.     On information and belief, Defendant Mau5Trap Records conducted business at all

relevant times through its principal owner and officer Defendant Zimmermann.

9.     Defendant Mark Brown is a person having hs pkace of business in Miami Florida.

10.     Defendant CR2 Records Ltd. ("CR2 Records") is a business having a principal place of

business at 2 Jardine House, The Bavarian Business Village, Bessborough Road Harrow,

Middlesex, HA1 3EX.

11.     On information and belief, at all relevant times, CR2 Records conducted its business

through its principal owner and officer, Defendant Mark Brown.

12.     On information and belief, there exists, and at all relevant times existed, a unity of

interest and ownership between and among Defendant Oakenfold, on the one hand, and Perfecto

Records on the other, such that any individuality or separateness between them has ceased and

they and each of them are the alter egos of each other. Therefore, Plaintiff alleges that adherence

to the fiction of the separate existence of these Defendants would permit abuse of the corporate

privilege and promote injustice. Upon information and belief, Perfecto Records derived

significant revenue form its unauthorized exploitation of Plaintiff's Infringed Work, which made Perfecto Records attractive to third parties that have purchased, merged, and sold Perfecto Records with each such transaction bestowing substantial wealth on Defendant Oakenfold. Plaintiff's master recording of the Infringed Work is one of the crown jewels of Perfecto Record's catalog and, upon information and belief, was pivotal to all of Defendant Perfecto Records' business dealings.

13.     Cox's use of the copyright to the song  "I want you forever" has damaged Victor Mitchell and he seeks recovery of said damages, in amounts to be proven at trial.

14.     Defendant Oakenfold's use of the copyright and subsequent release of the song "I want you forever" has damaged Victor Mitchell and he seeks recovery of said damages, in amounts to be proven at trial.

15.     Defendant Oakenfold's use of the copyright and subsequent release of various infringing remixes of the  "I want you forever" has damaged Victor Mitchell and he seeks recovery of said damages, in amounts to be proven at trial.

16.     Defendant Zimmerman's use of the copyright and subsequent release of several modified versions/remixes of the song "I want you forever" has damaged Victor Mitchell and he seeks recovery of said damages, in amounts to be proven at trial.

17.     Defendant Brown's use of the copyright and subsequent release of the song "I want you forever" along with several remixes has damaged Victor Mitchell and he seeks recovery of said damages, in amounts to be proven at trial.

18.     Defendants as a group have further infringed on Plaintiff's rights by granting licenses of the infringing work to other labels and those subsequent releases of the infringing song "I want you forever" along with several remixes has damaged Victor Mitchell and he seeks recovery of

said damages, in amounts to be proven at trial.

## BACKGROUND

19.     There are movements in all things artistic that change the trajectory of the genre from where it began. Such energy is evident throughout the history of Chicago music. Chicago is famous for its innovative blues and jazz. Both are the product of the "great migration" of blacks from the South heading to the industrial Midwest looking for steady work and a better life. With them they brought the Delta Blues, performed acoustically. This music from the Mississippi Delta merged in Chicago with electrical instruments creating the "Boogie- Woogie" style which created may of the elements that formed the basis of "rock and roll."

Jazz came by way of New Orleans and its "Dixie Land" style. It evolved in Chicago and became "Swing."

20.     Chicago is also famous for "House Music." House Music was developed in the houses, garages and clubs of Chicago and was initially recorded for local club-goers in the "underground" club scenes, rather than for widespread commercial release. As a result, the recordings were much more conceptual, and longer than the music usually played on commercial radio stations. House musicians used new technology in innovative and unique ways of using analog synthesizers and sequencers to create and arrange the electronic elements and samples on their tracks, combining live traditional instruments and percussion and soulful vocals with preprogrammed electronic synthesizers and "beat-boxes". House, perhaps more than any other form of black music, has birthed many offshoots and spread its sound far and wide. The prevalence of four on the floor beats in modern dance music is largely derived from House Music. House Music has influenced, in some capacity, Garage House, Eurodance, Jungle Music,

Electropop, Dubstep, Acid House, EDM and even certain elements of Alternative

Rock and Hip Hop.

21.     One vehicle that spread House Music out from the underground clubs and parties to the

public was Dance Mania Records. A pivotal song in their catalogue was Victor Romeo's

(Plaintiff's stage name) "Love Will Find a Way."  "Love Will Find a Way" (the "Infringed

Work"), created between April-June 1988 in Chicago Illinois by Victor Parris Mitchell was

released on Dance Mania Records in 1989 and was distributed by Barney's Wholesale vinyl

record, CD, Cassette Distribution, located in Chicago Illinois.  Barney's Wholesale Distribution

sold domestically retail, and as an international wholesale vinyl record export distributor

throughout Europe, but not limited to Europe. Mr. Mitchell owns the copyright for both the

composition of Love Will Find a Way and the sound recording described above. Plaintiff

obtained federal copyright registrations for each in 1989. (Ex. A.)

22.     "Love Will Find a Way" gained international acclaim as an early pioneering Chicago

House recording largely because of this distribution network:  DJs played this recording in

venues, and on the radio internationally. Defendant Carl Cox, being an early European

pioneering House Music DJ from the UK would play "Love Will Find a Way" vinyl recording

during his performances. Carl Cox was a rising star and this song was "hot in the streets".

23.     Carl Cox, the British electronic dance music icon, has long been regarded as one of the

pioneers of the global dance music scene. His illustrious career, spanning over four decades, has

left an indelible mark on the electronic music industry, with countless hits and legendary

performances. Among his many accomplishments, one track stands out as a career-defining

moment: "I Want You (Forever)."

24.     In the late 1980s and early 1990s, the dance music scene was undergoing a revolution,

and Cox was at the forefront. He was known for his electrifying DJ sets and tireless dedication to pushing the boundaries of electronic music.

25.    "I Want You (Forever)," released in 1991, would become an anthem of the era and a defining moment in Carl Cox's career. In interviews, Carl has reflected on the creative process behind the track: "I was deeply inspired by the energy of the rave scene at the time. The parties were massive, and the music was evolving rapidly. I wanted to capture that euphoria and the sense of unity on the dancefloor. 'I Want You (Forever)' was born out of that desire."
The track's infectious groove and powerful vocal samples resonated with audiences worldwide. It climbed the charts and became a timeless classic, cementing Carl Cox's status as a dance music legend.

26.    Magazine articles from that era hailed the track's impact: Mixmag, 1991: "Carl Cox's 'I Want You (Forever)' is a sonic masterpiece that encapsulates the essence of the rave culture. Its infectious beats and memorable vocal samples have solidified its place as a dance music anthem for generations to come."

27.    Carl Cox once said, "I never set out to become a legend; I just wanted to share my love for music with the world. 'I Want You (Forever)' was a milestone, but it was just one chapter in my ongoing exploration of sound and rhythm."

28.    Carl Cox's career and the enduring legacy of "I Want You (Forever)" serve as a testament to the transformative power of music and the unwavering commitment of an artist who has left an indelible mark on the world of dance music.

29.    This would be a perfect end to the story of a self-made man making more of himself by applying his knowledge and creativity along with the desire to "do more than DJ" .  If Carl Cox had simply been inspired by the likes of Victor Romeo's song that he played and went on to

create something new that he used to excite crowds. Carl chose instead to sample from "Love Will Find a Way", taking significant portions of Plaintiff's sound recording without authorization, thereby infringing on Victor Mitchell's copyrights in and to the composition and the sound recording for the Infringed Work.

30.     Carl Cox did not reach out to Mr. Mitchell to seek permission.  When Mr. Mitchell discovered the unauthorized use of his sound recording and reached out to Perfecto Records, Perfecto Records equivocated and claimed that other unauthorized parties gave Perfecto Records to use Plaintiff's sound recording. Such third parties did not have the right to authorize Perfecto Records to use Plaintiff's sound recording.

31.     In 1991 Carl Cox and the other Defendants used sampling technology to extract portions of the sound recording for Plaintiff's "Love will find A Way" which Defendants used to create several new songs featuring significant portions of Plaintiff's Infringed Work, releasing versions of each new song through Defendant Oakenfold's Perfecto Records and other entities to be identified through Discovery.

32.     Defendant Paul Oakenfield released Defendant Carl Cox's "I Want You Forever" (whose title is derived from the Leatrice Brown vocals taken without authorization from Plaintiff's work) via his Perfecto Records label without authorization from Mr. Mitchell who at all relevant times owned the copyright in and to the composition and sound recording of the Infringed Work.

33.     In 2011, Mitchell notified Defendants Perfecto Records and Cox that he had become aware of their infringing activities as described above. 17.   On July 11, 2011 Victor received notice from Defendant CR2 Records that it had released another rversion of "I want you Forever" (Yousef Remix) without Plaintiff's permission. Acknowledging Plaintiff's rights in the work sampled in this remix, Defendant CR2 Records offered to pay Plaintiff 1,000 British

pounds, 50 percent of any proceeds from publishing royalties, writer's royalties, and master recording rights.

34.     Before making this offer to Plaintiff, Defendant CR2 Records claimed 98 percent ownership of Mr. Mitchell's work.

35.     Defendant CR2 Records made no changes to the infringing Yousef Remix despite acknowledging Plaintiff's rights and CR2 Records' error in using Plaintiff's Infringed Work without authorization when offering him the proposal described above.

36.     After recognizing that its Yousef Remix infringed upon Plaintiff's rights, Defendant CR2 Records released additional unauthorized remixes featuring significant portions of Plaintiff's Infringed Work with many earning significant revenue. Plaintiff was not compensated by CR2 Records for any of these infringing remixes.

37.     CR2 Records released at least 5 other infringing versions of I Want You Forever featuring significant portions of the Infringed Work on vinyl, knowing it had no right to do so. Defendant CR2 Records made no attempt to obtain Plaintiff's authorization or compensate Plaintiff for those versions. Defendant CR2 Records did not notify Mr. Mitchell of these other versions, one of which received over 39 million streams on Spotify alone.

38.     Defendant Zimmerman created a remix using Plaintiff's Infringed Work and released it on his own Deadmau5 label. Upon information and belief, Defendant Zimmerman  licensed this infringing remix to others such as the UK label Cubrik.

39.     Defendant Zimmerman's label was/is distributed by Defendant Ultra Music/Sony Music in the US.

JURISDICTION AND VENUE

40.     This is an action for copyright infringement arising under the Copyright Act of

1976, as amended, Title 17, United States Code §§ 101 et seq. (the "Copyright Act"), and pendant claims pursuant to the laws of the State of Illinois.

41.     The Court has original subject-matter jurisdiction over the Copyright Act claims pursuant to 28 U.S.C. § 1331. To the extent this Complaint contains claims for relief under Illinois law, those claims are specifically authorized to be brought in this Court under the provisions of 28 U.S.C. §§ 1338(a) and 1338(b).

42.     This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. This Court has further personal jurisdiction over Defendants because they, and each of them, conduct business continuously and systematically in Illinois for the purpose of engaging in, inter alia, the manufacture and distribution of sound recordings and the licensing of musical compositions created and/or owned byPlaintiff, as well as related activities within the State of Illinois and this District.

43.     Defendants are further subject to personal jurisdiction because they placed their infringing products into the stream of commerce with the expectation that such products would be delivered to and viewed by consumers within the State of Illinois and within this District, and Defendants' infringing products were delivered to and viewed by consumers within the State of Illinois and within this District.

44.     Venue is proper in this Judicial District because a substantial part of the events or omissions giving rise to the claims occurred here. Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1400(a).

COUNT 1

(DECLARATORY JUDGMENT OF INVALIDITY OF DEFENDANTS' REGISTRATIONS

FOR THEIR INFRINGING WORKS -FRAUD ON COPYRIGHT OFFICE)

(Against All Defendants)


45.    Plaintiff repeats and realleges the allegations in Paragraphs 1 through 45, as if

fully set forth herein.

46.    Plaintiff is now and at all relevant times has been the owner of the

copyrights in the recording and composition set forth in Exhibit A.

47.    Defendants knowingly submitted materially false information to the

Copyright Office by claiming ownership in Plaintiff's composition and sound recording.

Defendants made these materially false representations to the Copyright Office to induce the

Copyright Office to issue federal copyright registrations to the Defendants for their infringing

works. Consequently, the Defendants were issued copyright registrations for their infringing

works that would not have issued but for Defendants' material misrepresentations.

48.    None of the Defendants ever received a valid assignment, transfer, or license of any

copyright interest in or to any of the Plaintiff's composition and/or sound recording for the

Infringed Work. Defendants have no rights in or to Plaintiff's Infringed Work.

49.    The Defendants' copyright registrations were procured by fraud and would not have been

issued had the Copyright Office been aware of Defendants' intentional and fraudulent

representations that they owned Plaintiff's Infringed Work or any rights to the same when they

did not. As a result, the Defendants' copyright registrations must be invalidated since the

information provided by Defendants as to ownership and "transfer" was and is false and material.

50.     Such inaccurate information was included on the Defendants' applications with knowledge that it was inaccurate and such inaccuracy would have caused the Register of Copyrights to refuse registration had it known that the representations made by Defendants were false.

51.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., authorizes this Court to declare the rights and legal relations of parties to an active controversy under its jurisdiction.

52.     There is an actual, present, and existing dispute between and among the Parties concerning the validity of the copyright registrations Defendants obtained for songs that made liberal and unauthorized use of Plaintiff's Infringed Work.

53.     The Court's determination of the issues presented herein would be final and conclusive insofar as the declaratory judgment sought by Plaintiff would fully and finally resolve the Parties' disputes with respect to the validity of the Defendants' Copyright Registrations.

54.     The copyright registrations Defendants obtained through fraud on the Copyright Office gave Defendants a false imprimatur of legitimacy that facilitated their exploitation of many works that infringed upon Plaintiff's copyright rights. Defendants' fraud on the Copyright Office caused direct and considerable damage to Plaintiff in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully prays that the Court find in his favor and enter an order and judgment as follows: issuing a Declaratory Judgment finding that ALL DEFENDANTS committed Fraud on the Copyright Office in their applications for their various Copyright Registrations for works that infringed upon Plaintiff's Infringed Work and that Defendants' copyright registrations obtained through fraud on the Copyright Office are invalidated.

COUNT II

(WILLFUL DIRECT COPYRIGHT INFRINGEMENT)

(Against All Defendants)

55.     Plaintiff repeats and realleges the allegations in Paragraphs 1 through 55, as if fully set forth herein.

56.     Plaintiff is the author and owner of the copyrights in and to the composition and sound recording for the Infringed Work shown in the copyright registration information attached in Exhibit A.

57.     As the owner of the copyrights in the Infringed Work, Plaintiff has the exclusive right under the Copyright Act to, among other things, produce, manufacture, transmit and/or distribute phonorecords embodying them. Only Plaintiff is able to transfer any rights in Plaintiff's Infringed Work to a third party.

58.     Defendants conduct, either directly and/or through third parties, constitutes willful infringement of Plaintiff's Works.

59.     At various times during the period prior to the commencement of this action, Defendants, individually and/or collectively, copied and reproduced significant portions of the Infringed Works without authorization and distributed, sold, and/or licensed both physical and digital copies of infringing works based on and incorporating Plaintiff's Infringed Work without the authorization or consent of the Plaintiff.

60.     Defendants, individually and/or collectively, had no license or other form or permission, whether express or implied, to copy, reproduce, duplicate, perform, record, sell, use, transmit, distribute, or in any way use or exploit the Infringed Work.

61      By reproducing, manufacturing, distributing, transmitting, and selling copies of

works based upon and incorporating significant portions of the Infringed Work without any

license or other authorization, Defendants have infringed Plaintiff's rights in and to the

composition and sound recording of the Infringed Work in violation of the Copyright Act.

62.     The Defendants' infringing acts were done in knowing and reckless disregard of

Plaintiff's rights in and to the Infringed Work, and such infringements were willful as that term

is defined in the Copyright Act.

63.     As a direct result of the Defendants' infringement of the Infringed Work,

Plaintiff is entitled to his actual damages with respect to each infringing use of the Infringed

Work, including the Defendants' profits from such infringing activity, as will be proven at trial.

Alternatively, Plaintiff may elect to recover statutory damages and are entitled to

the maximum statutory damages available for willful infringement under 17 U.S.C. § 504, in the

amount of $150,000 with respect to each infringing work and to any and all other relief the Court

deems just and proper under the law.

64.     Plaintiff, is entitled to his costs, including reasonable attorneys' fees, pursuant to 17

U.S.C. § 505.

65.     Defendants' conduct caused, and unless enjoined by this Court, will

continue to cause Plaintiff great and irreparable injury to his reputation and career that cannot be

adequately compensated or measured in money.

66.     Plaintiff has no adequate remedy at law.

67.     Pursuant to 17 U.S.C. §502, Plaintiffs are entitled to a

permanent injunction prohibiting further infringement of the Infringed Work.

WHEREFORE, Plaintiff respectfully prays that the Court find in his favor and enter an order and judgment as follows: (i) finding ALL DEFENDANTS liable for direct, willful infringement of Plaintiff's Infringed Work, including Defendants' profits, in such amounts as may be found; or (ii) in the alternative and at Plaintiff's election awarding statutory damages pursuant to 17 U.S.C. § 504(c) in the maximum amount allowed by law; (iii) awarding Plaintiff the costs of this action, including reasonable attorneyss fees pursuant to 17 U.S.C. §505 relating to the infringements of Plaintiff's Infringed Work identified in Exhibit A; and (iv) entering such further relief that this Court deems just and appropriate, as well as Plaintiff's costs, including reasonable attorneys' fees as provided by statute, and interest on his damages at the legal rate.

## COUNT III

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

68.     Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 68, as if fully set forth herein.

69.     At various times during the three-year period prior to the commencement of this action, the Infringed Work has been and continues to be illegally reproduced, published, licensed and/or sold and distributed by Defendants without Plaintiff's authorization in violation of 17 U.S.C. § 101 et seq.

70.     Plaintiff owns the copyrights for the composition and sound recording of the Infringed Work both of which have been infringed by the Defendants as hereinabove alleged.

71.     The Defendants are secondarily liable under the Copyright Act for such infringing acts, including for the direct infringement of Plaintiffs' exclusive copyright rights by Perfecto,

Mau5Trap Records and CR2 Records.

72.     The Defendants induced, caused, participated in, aided and abetted and/or materially contributed to the infringing conduct by Perfecto, Mau5Trap Records and CR2 Records .

73.     Defendants Cox, Zimmerman and Brown are liable as a contributory copyright infringer. Cox, Zimmerman and Brown had actual and constructive knowledge of the infringing activity that occurred and is occurring with respect to the Infringed Compositions, and induced, caused, participated in, aided and abetted and/or materially contributed to such infringing conduct by Perfecto, Mau5Trap Records and CR2 Records.

74.     The foregoing acts of infringement by Cox, Zimmerman and Brown have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

75.     As a direct and proximate result of such infringement of Plaintiffs' Works and Plaintiffs' exclusive rights under copyright, Plaintiffs, or either of them, are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each of the Infringed Works or such other amounts as may be proper.

76.     Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to actual damages with respect to each of the Infringed Works, including Cox's, Zimmerman's and Brown's profits from such infringements, in such amounts as will be proven at trial.

77.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully prays that the Court find in their favor and enter an order and judgment as follows: finding DEFENDANTs COX, ZIMMERMAN and BROWN liable for contributory infringement of Plaintiffs' Works and (i) awarding actual damages pursuant to 17

U.S.C. §504(b), including any profits of Defendant Rachel Cain, in such amounts as may be found; or (ii) in the alternative and at Plaintiffs' election relating to the infringements of Plaintiffs' Works, awarding statutory damages pursuant to 17 U.S.C. § 504(c) in the maximum amount allowed by law; (iii) relating to the infringements, awarding Plaintiffs the costs of this action, including reasonable attorney's fees, pursuant to 17 U.S.C. §505; and (iv) entering such further relief that this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues which are so triable.

Respectfully submitted,

s/s: Sean Mulroney
Attorney for the Plaintiffs

Dated: January 8, 2024

ARDC #6196973
Sean M. Mulroney & Associates
516 N. Ogden Ave., Suite 191
Chicago, IL 60607
(312) 756-0011
sean@seanmulroney.com

*Attorneys for the Plaintiffs*

Anderson J. Duff (4860383)
Duff Law PLLC
353 Ocean Ave. Ste. 4E
New York, New York 11226
(646) 450-3607
ajd@hoganduff.com

*Attorneys for Plaintiff*